Good morning. My name is Stephanie Adractis and I represent the petitioner Earl Dixie I would like to reserve two minutes of my time Okay Dixie is serving a sentence of 25 years to life based on a conviction for evading the police a Wobbler offense that can be charged as a misdemeanor under California law Under California law the that offense now can no longer subject a defendant to a sentence of more than three years Dixie's trial counsel was prejudicially ineffective because she failed to conduct a reasonable investigation into his diagnosis of paranoid schizophrenia And she also failed to present to present a defense based on his mental health at trial the Riverside County Superior Court unreasonably applied Strickland and Wiggins went which required that counsel conduct a reasonable investigation prior to preparing a defense How do we know she didn't? Mr. Dixie's statements are the evidence that we have in the record He states that no expert ever met with him or evaluated him And we also know that from trial counsel's statements during closing argument where she told the jury Hey, there could have been a better defense here based on mental health and schizophrenia, but that's not in front of you So we know that she bypassed that defense and that mr. Dixie was never Is there anything in the record that suggests that that defense? that that illness Would have caused him Would have disenabled him from developing the intent to commit the crime your honor What we do have are the prison medical records that mr. Dixie attached to his state petitions and they do make reference to visual and auditory Hallucinations and the fact that he's paranoid and that he suffered from these symptoms for a long time No, no that deals with the issue of whether He had schizophrenia. Is there anything in the record that would suggest that this? Prevented him from forming the intent To escape from the police when he saw them walking towards his car And then he took off at a hundred miles an hour He testified himself that he wasn't suffering from any of those symptoms that you've just described Well, your honor he testified that he right before he fled from the police The thought that was in his mind was that he wanted to go home and that he then had no memory of fleeing from The police and the next thing he remembered was waking up in the hospital I don't know blood except he went through I mean you have pretty low burdens on the type of Intent that you have to have in the activities that were involved because essentially you have ingesting Substances drove a motor vehicle police approached his car. He be at which time he began what eventually became a high pace speed chase reaching a hundred miles an hour crashing through fences struck palm trees ran red lights drove on the wrong side of the Before he came to a halt he damaged his vehicle You know, he was convicted at trial of evading the police as well as several misdemeanors and he had prior convictions under three strikes okay, so and plus If if it would be doubly bad news You're under EDPA at which has a doubly deferential standard of review Which is what's your strongest case supporting a grant of relief on Dixie's IAC claim? Your honor. It's based on her counsel's failure to investigate at all when she did know that. Mr Dixie suffered from schizophrenia and when she was attempting to present a mental defense at trial and When her arguments to the jury demonstrate without question that she misunderstood Misapprehended the law that she was trying to persuade the jury to apply. She told the jurors Because mr. Dixie was intoxicated His his actions were not less criminal. That is incorrect. And is there any affidavit from counsel in the lower court? There is not your honor. She did not supply an affidavit. All right, that's problematic It's problematic. You're speculating. Did you try and get one from her? I'm sorry. Did you represent the Represent him in the federal district court. He was pro se your honor in the district court So we couldn't add a new declaration in the in the appeal But we do know from counsel's statements to the jury what she was thinking because she thought that she could persuade them to Acquit him just because he was drunk and because he'd taken drugs, which is Absolutely. I think what her argument was that if he wanted to make up a story about a story would have been that he was schizophrenic But he testified that he was high He the troubling thing about her statement though is her acknowledgement of the fact that it's a better defense to the jury This is bizarre dangerous May not have it may not it may we don't know it may or may not have been a better defense It's hard to imagine an expert witness one who understands schizophrenia and who understands psychiatric Illness who would not have been able to explain to the jury that mr Dixie unlike a person who doesn't suffer from schizophrenia Would have been but what do you have to but to commit the car to be convicted of the crimes that he was convicted of These are not They're not They don't require a lot of mental acuity I mean in terms of like you see a police car and you take off at a hundred miles an hour you ingest drugs and you're There isn't any specific intent under there that you have to know That that would have caused you to be driving under the influence. You don't have to know any of that You just have to you're under the influence We're not contesting the under the influence conviction it's the only the evading the police which was the only felony and the Prosecutor did have to show beyond a reasonable doubt that he had the specific intent to evade the police When you look at the but then all for that you need to know is it's a police car and if they're in police uniforms It's not it's not rocket science. It's not like yeah, you have to know the police manual It's not but what we have here is a very particularly acute situation a person who was profoundly grieved by his Essentially adopted daughter's recent death somebody who was had taken PCP Which even the state's experts said can cause a dissociative state almost immediately And then when you add to that a chronic severe and disabling illness like schizophrenia it presents a different issue for the jury than just saying that he was high and that's the troubling issue here that a juror listening to these very Bizarre injuries didn't make a good argument for juror nullification. I I mean, I don't think IAC requires Investigation for journalification it requires putting defenses on right not suggesting that the jury that she was trying to get them to nullify or that She should have done that but the jurors should have been fully informed about mr Dixie's mental health in order to make a fair judgment about whether the Prosecutor approved beyond a reasonable doubt that he actually formed with the intent to evade the police and because they didn't receive that information They didn't hear from a defense expert who could have explained to them about mr. Dixie's very long-standing serious mental illness, it's your position that a Mental health expert would have testified that he was incapable of performing the intent to evade the police Your honor because an expert did not evaluate him because the defense counsel Do the investigation that she should have done we don't have access to that expert testimony And I realize respondent discusses that at length in his brief. Mr. Dixie's indigent He didn't have the thousands of dollars It would have taken to hire an expert post conviction to do that evaluation for him That's why I say you want to save your balance for rebuttal. Thank you. Okay Good morning, your honors and may it please the court, California Deputy Attorney General Daniel Hilton for respondent This court's questions really cut to the heart of the matter here first, we have no declaration from counsel So it's very well possible that counsel did do some preliminary investigation and then determined that further investigation was unnecessary Especially he was pro se in the district court, was he? Yes, was he pro se in the district court? Yes, he was pro se So he failed to provide an affidavit correct Will you give that any weight if he's pro se? Well, your honor. He didn't not only did he not submit an affidavit But he didn't submit an affidavit from himself saying that he was unable to reach counsel or that he didn't have the resources to do so So it doesn't appear that he made any effort There's nothing in the record suggesting he made any effort to contact counsel or an expert And because it's possible that counsel did make efforts that supports the argument that this really was a tactical decision and the closing arguments Counsel went through the different arguments they could have ran and said no we're going with this argument because we think it's the truth And we think it's the strongest. Did you make any effort? I know it it's not uncommon at least In New York in the Eastern District and possibly in the Second Circuit It to get an affidavit From the to ask the lawyer who? Represented the defendant at trial for the affidavit Saying this is what this is what your client says happened. Did it happen and why not? Yeah, it's very common Your honor the last case I argued here did have an affidavit from counsel and they are often provided And there was no indication that one was even sought in this case let alone provided But I think the more should that be your burden? I don't believe so your honor because in the state courts and also in the district court It's a defendant that has the burden as the petitioner Yes, but of course he was pro se And he has mental issues Yes, your honors, but he again he could have he's an incarcerated propate pro se petitioner Has a limited ability to obtain expert evidence and his IAC claim was that his own trial counsel failed to indicate Investigate his mental health issues and develop the record in that regard Should the habeas court taken that into account when assessing whether or not if the petitioner had met his burden No, I mean your eyes aren't supposed to light up when you have a pro se and say like yes Of course your honor you're correct, but in this case certainly he didn't need to provide thousands of dollars for an expert But he could have at least provided a declaration from himself Which would be the bare minimum saying I tried to contact an expert and I don't have the sufficient You didn't have to provide thousands of dollars. You could make a motion and then a habeas petitioner could ask a district court Under the Statute to appoint For money to a point or to a point of an expert. He doesn't need thousands of dollars Certainly your honor and one other thing I'd like to point out is although he does suffer from schizophrenia He had no trouble litigating this case both in state court and federal court. He's filed. He filed four separate petitions Pro per so and Several of them were quite lengthy and supported with with case law and with citations to the record. They weren't gibberish by any means Okay, so we know what the sort of the facts of the case were so the record shows that trial counsel was aware of his Schizophrenia, I think as petitioners counsel has indicated But never consulted with a mental health expert and never request requested a mental health evaluation or even his mental health records Why is that not deficient? Conduct in light of What the facts of this case were your honor appellant's argument is based on the assumption that counsel never conducted any research But without an affidavit, we don't know that that's true Counsel very well may have conducted some sort of informal preliminary investigation and then determined based on the facts It was unnecessary because as this court's questions showed the facts of the actual event itself Immediately before during and after the chase all show that there was nothing having to do with schizophrenia that would have prevented appellant from forming specific intent Especially when we have him discarding the drugs right as the police arrived Pulling away and then pulling over when the police initially pulled him over Showing that he understood and recognized that if the police turn on their lights He has to pull over then he waited until the police got out of their car before taking off which gave him the maximum Amount of head start and the best chance of getting away He then turned off his lights as it was evening making him harder to detect He drove at speeds up to a hundred miles an hour weaving in and out of traffic And so all these facts show that he was not having hallucinations He was not suffering from delusions or hearing auditory voices. And so even if he could establish deficient performance He can't establish prejudice because by his own testimony There was nothing in this crime that had to do with his schizophrenia Let me ask you this he I think There's also an allegation because he got 25 to life because of his prior convictions under three strikes, right? Yes, your honor and how I didn't ask One case is Ewing versus, California, which counsel did not talk about and I would and in that case I I guess that's where the US Supreme Court upheld a 25 to life on much less aggravated But then another case is Gonzales v Duncan, which is the Ninth Circuit case where? Gonzales appeared to have far more extensive and violent criminal history than Dixie's yet. We found the sentence under California's three strikes law grossly Disproportionate. Yes, your honor So the two cases the United States Supreme Court's cases Andrade and Ewing both those cases involved very similar Criminal history and less serious third offenses that weren't dangerous to the community in both those cases involved wobblers Which in California are crimes that could be charged as a misdemeanor or a felony And so those cases are directly on point here the two cases relied on by appellant Which are Gonzales v Duncan and Ramirez v Castro which are Ninth Circuit cases are highly distinguishable in Gonzales v Duncan the the trigger crime that led to the sentence was Failing to register as a sex offender when the defendant moved and he had previously registered in the court indicated the district court indicated that it was concerned that the Defendant had actually tried to register and they described this offense as a mere regulatory offense that by itself poses no danger to society And that's in contrast of course here where the defendant was driving at a hundred miles an hour and nearly struck Someone who was in the bicycle lane as he drove through residential neighborhoods as for Ramirez v Castro in that case The defendant had only two prior robberies his entire criminal history and both were Were very minimal force was used and one was an open-hand push and the other he committed no act of violence But his co-defendant did and so in that in both of those cases They're distinguishable by the first the criminal history and then second the the trigger what what is? This defendant mr. Dixie's criminal So he has seven felonies six misdemeanors seven of those felonies are strikes They're robbery offenses and all involve the use of violence in one robbery He bit someone and another he stabbed someone in the leg with the screwdriver and in the third robbery He pulled someone out of the car and sat on them and when the police found him sitting on top of the victim while someone Was rifling through their pockets so given those or his prior offenses are more serious than Then certainly in in Ramirez v Castro and they're very similar to Andrade and Ewing and so You see that with that continuous criminal history where he had spent more than half of his adult life incarcerated and the one other thing I'd like to point out is that appellant was actually sentenced to 25 to life for his robbery offense and then that conviction was reduced on appeal So he already had the benefit of knowing that he was sentenced to 25 to life Getting a break getting out of prison and then within a short time later. He was again committing more felony level offenses Okay, anything else? No, your honor. The court has no further questions. I would ask you to affirm the district no judgment No additional. Oh, do you have a question? No, no additional questions. Thank you, Your Honor. All right, then rebuttal Thank you, Your Honor the court has asked whether there's any evidence that Mr. Dixie was suffering from a delusion at the time He was driving, but I would submit that the whole incident reflects delusional behavior because he had no Significant reason to flee from the police much less well. He had drugs He had a very small amount of marijuana in the car and a very small amount of gin both misdemeanor Conduct when he was under the influence and he was under the influence which again Is a misdemeanor your honor. It's not something that would justify a person fleeing at a lot of it hit the Bicyclist it could have been a second-degree murder. Absolutely, your honor but the point I'm trying to make is that it was delusional behavior because there wasn't a real reason for him to do this and No, what about the reason not to get caught? Because your honor it is doing 25 to life now Not to get caught is pretty motivational for a misdemeanor It comes up at trial your honor where trial counsel says, what did you think? What do you think you could be sentenced to for having a small amount of marijuana or a gin in the car? It's a misdemeanor He knows that that's very mild compared to the his prior offenses and is not going to subject him to a prison sentence So why would he flee in such a desperate and crazy way from the police? Unless he was suffering from some kind of a delusion at the time, especially in the 1978 Cadillac fleeing from a fleet of police vehicles and a helicopter It just doesn't make any sense. And so there is evidence here that he was Delusional at the time of the offense. It should have been Evaluated by an expert often also as to the issue of trial counsel's declaration Frequently trial lawyers don't cooperate and we don't know whether Dixie made Requests of his trial lawyer or not Explanation for not having the Affidavit is that the lawyers don't know but in my experience is both ways That sometimes the lawyers don't want to give an affidavit and sometimes they fall on their sword Unnecessarily to try and help their client, but the but there's no explanation given Anywhere, I mean he brought several collateral proceedings. I don't understand the collateral The collateral proceedings in California with several habeas corpuses, but he brought several collateral proceedings and I I just want to ask you one more question. I believe the the driver in the ambulance testified that he took his medical history and There was a list of the illnesses that he said he suffered from while he was being driven To the hospital and in fact It was accurate in other words, you know when Dixie testified he didn't remember What what whether he gave those answers, but in fact the testimony of the of the of the Medic on the who drove to the hospital Accurately reflected his medical history, which would suggest that he was fairly lucid Yes, your honor there was mixed testimony because the first person on the scene described him as being non-responsive Well, the first person on the scene was just there immediately, you know after this car stopped suddenly But by the time he got into the ambulance, he apparently was lucid enough To provide his medical history and your honor. There's also Evidence in the record that he said he was HIV positive, which he's not so there was mixed Said he wasn't who knows nobody was gonna go. It was not really relevant to take a test of whether he was or he wasn't But all I'm suggesting is is that he appeared to be quite lucid in the ambulance right afterwards Your honor. Yes the the ambulance Paramedic said that he was able to respond to the questions and gave those answers the first Medical person on the scene described him quite differently. I understand that but it seems to me the reason that the this Ambulance drivers is significant. It was because it accurately reflected That he had schizophrenia and I don't remember the other Collection of illnesses that he described and somebody who and and he admitted Dixie that in fact he had those illnesses forget about the HIV for the moment So somebody who was who was totally out of it and not lucid couldn't have given those answers At the time he was being driven in the ambulance. Those were the answers that were Yeah, so he was he was not quite out of it at that time Yes, the testimony preceding that indicates he was Intelligible, so it is a mixed record your honor. I do acknowledge that All right. Thank you both for your arguments this matter will stand submitted
judges: Fisher, Callahan, Korman